### STODGHILL *vs.* THE STATE OF GEORGIA.

The verdict was not contrary to law or the evidence, and a new trial is refused, even though the solicitor general stated that he thought the ends of justice might be better accomplished by the grant of a new trial.

Criminal law.   New trial.   Before Judge SPEER.   Butts Superior Court.   March Term, 1880.

Reported in the decision.

T. W. THURMOND; BECK & BEEKS; M. O. McKIBBEN; H. C. PEEPLES, for plaintiff in error.

F. D. DISMUKE, solicitor-general, for the state.

HAWKINS, Justice.

The defendant, Felix Stodghill, was tried and convicted of murder in killing one Theophilus Jones, with recom-

mendation to mercy. He made a motion for a new trial in the court below, which was overruled, and he excepted.

The grounds were that the evidence did not show that a homicide had been committed, or that defendant used a weapon likely to produce death, or that Jones was dead; that no malice was shown, and that the verdict was contrary to evidence, without evidence, and contrary to law.

When the case was called in this court for argument, the solicitor-general of the circuit announced to the court that, from the circumstances of the case on the trial of the defendant in the court below, as well as the apparent mental condition of the defendant, the ends of justice would be subserved by granting him a new trial by this court. ·He did not appear before the judge on the motion for new trial, as he thought the judge would grant the same.

We have given the case a careful examination, with the desire to grant a new trial, on account of the high regard we have for the opinion of the state's officer, and his statement made in open court, and it is painful for us to make the decision refusing a new trial, but a sense of im-perious duty compels us, in the administration of criminal justice, to decide in accordance with established principles in this as in all other cases.

The evidence shows that defendant and deceased were both colored men; were together, with two other men, pulling fodder in a field, when defendant used vulgar and obscene language to the deceased, who remarked that if you repeat that I will hit you with a rock. Defendant repeated the words and deceased stooped down as if to get a rock, when defendant struck him on the temple with a rock weighing one and three-fourths of a pound, from which Jones died in six or eight minutes. There were no rocks in that part of the field, and the rock used was what the witness called an iron rock, not known on the land where the homicide occurred. Defendant and deceased had been quarreling during the week before the killing.

Two witnesses gave evidence and both were present or close by "at the killing."

One of them said: "They, deceased and defendant, had been quarreling nearly all the time from Monday until Thursday, when defendant struck deceased with the rock. Before difficulty, defendant did not pick up the rock; at the time defendant did not stoop down to pick up rock. Deceased did not make any effort to hit defendant. Surface of the ground sandy, and no rocks on the ground where the homicide took place. The rock was what I call an iron rock, flat, and weighed one and three-fourth pounds. Hit deceased on left temple, and deceased lived six, eight or ten minutes. The sizes of the two men were about the same. Jones was a little the stoutest. Don't think there was any rock like the one defendant hit deceased with on the plantation. Defendant used slighting expressions of and to deceased."

The other witness corroborated the evidence, and testified that when defendant had struck deceased he said that Jones had got him into trouble.

We see nothing in this case to reduce the killing from murder to manslaughter. It wants all the essential elements of manslaughter under our law.

The deceased at the time of the killing was not manifestly intending and endeavoring by violence or surprise to commit a serious personal injury upon defendant—in fact, was not assaulting defendant at all. Defendant began the abusive utterances, was prepared with the rock—not having stooped to get it, and there being no such rock on the plantation, and no rocks of any kind where the killing took place—and saying that deceased had gotten him in trouble. Whether these facts showed express malice is immaterial; the law implies malice in every killing where there is no considerable provocation, and where all the circumstances show an abandoned and malignant heart. Whether the rock was a weapon likely to produce death was demonstrated by the fatal result,

and, besides, every person is presumed to intend the legitimate consequences of his act.

As it appears to us the court committed no legal error in refusing the new trial.

If, however, it shall hereafter appear that either on account of the mental condition of the defendant, or the circumstances connected with his trial, that this conviction ought not to remain, which this record fails to show, then there is another department of the government clothed with ample power to award him complete justice, in the exercise of executive clemency, and thither he must resort.

Let the judgment be affirmed.